**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re Application of | : | Civil Action No. 20-17070 (MCA) (MAH) |
| MARTIN & HARRIS PRIVATE | : | |
| LIMITED, | : | |
| | : | |
| Petitioner, | : | OPINION |
| | : | |
| | : | |

## I.   INTRODUCTION

This matter comes before the Court by way of Merck & Co., Inc.'s motion [D.E. 9] seeking to quash a subpoena that Petitioner, Martin & Harris Private Limited (hereinafter "M&H"), served on Merck & Co., Inc. (hereinafter "Merck") for testimony and documents for use in a foreign action, pursuant to 28 U.S.C. § 1782.  M&H has cross-moved to compel compliance with the subpoena [D.E. 11].  The Court has considered the motion on the papers, pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth herein, the Court will deny Merck's motion to quash, and grant M&H's cross-motion to compel subject to the parties meeting and conferring on the timeframe and categories set forth in the subpoena.

## II.   BACKGROUND

The testimony and documents that M&H seeks in this matter pertain to litigation currently pending before the High Court of Judicature at Bombay, in Mumbai, India (hereinafter, the "Foreign Action").  In the Foreign Action, M&H has brought suit against Organon India Limited, Organon B.V., and Merck.[1]  M&H seeks damages arising from Organon India's

---

[1] Organon Laboratories and Organon U.K. are predecessors of Organon India Limited. Declaration of Lalit Jain in Support of Ex Parte Application, Nov. 24, 2020, D.E. 1-2, at ¶6. Organon India Limited was incorporated as a subsidiary of Organon U.K. in 1967. *Id.* ¶9.

unilateral termination of an agreement between M&H and Organon.  According to M&H, M&H

has long served as the exclusive importer and selling agent for Organon pharmaceutical products

in India.  Declaration of Lalit Jain in Support of Ex Parte Application, Nov. 24, 2020, D.E. 1-2,

at ¶¶5-6 ("Jain Decl.").  This relationship began with Organon Laboratories U.K. and continued

following the incorporation of Organon India in 1967.  *Id.* ¶¶7-9.  When Organon India was

incorporated, M&H formulated the raw materials supplied by Organon India into finished

products such as tablets and ampules, and maintained exclusive distribution rights in India.  *Id.*

¶9.  M&H represents that it invested substantial effort and resources in meeting its obligations to

Organon India, and in reliance on the parties' arrangement.  *Id.* ¶¶10-12.

As M&H acknowledges, however, "there was no written contract between the parties" for

several decades.  *Id.* ¶13.  That changed on February 18, 1998, with the execution of what M&H

refers to as the First Agreement between M&H and Organon India (then operating as Infar

(India) Limited).  *Id.* ¶15 & Ex. A.  The First Agreement was modified in April 2001, resulting

in the execution of the Second Agreement.  *Id.* ¶16 & Ex. B.  It does not appear that either the

First Agreement or Second Agreement (collectively, "the Agreements") contained any provision

specifically addressing termination of the parties' arrangement.

In 2007, Schering Plough Corporation U.S.A. acquired a controlling interest in Organon.

*Id.* ¶19.  In 2009, Schering Plough Corporation merged with Merck.  *Id.*  Therefore, "the

controlling interest in Organon India as disclosed vests in Organon B.V., which in turn is

controlled by Merck.  Organon B.V. is [a] wholly owned subsidiary of Merck."  *Id.*  According

to M&H, following the Merck merger, Organon India insisted on changing the distribution

---

According to Plaintiff, Organon India Limited currently is a subsidiary of Organon B.V., which
is a wholly owned Merck subsidiary and a defendant in the Foreign Action.  *Id.* ¶19.  Unless
otherwise noted in this Opinion, "Organon" refers specifically to Organon India Limited.

systems unilaterally, at the behest of Merck. *Id.* ¶¶19, 21, 24. In 2010, M&H alleges, Organon India "conveyed that they are now guided by Merck's policies and . . . that it would terminate the existing arrangement effective [3] months from receipt of the letter" dated August 2, 2010. *Id.* ¶24.

On November 8, 2010, M&H brought suit against Organon India, Organon B.V., and Merck. M&H alleges that Defendants wrongfully terminated the agreement, and seeks approximately $346,000,000 in damages. *Id.* ¶27; *see also* M&H Brief in Support of Mot. to Compel, D.E. 11-16, at 4.

On November 24, 2020, M&H filed the instant *ex parte* application for discovery under § 1782. D.E. 1. The Court required M&H to justify its *ex parte* filing or serve the application on Merck. Order, Dec. 14, 2020, D.E. 3. In response, M&H submitted a supplemental memorandum of law concerning the *ex parte* filing. Memorandum of Law in Further Support of Petitioner's Application, Dec. 18, 2020, D.E. 4. After considering M&H's initial application and supplemental memorandum, the Court granted the application. Order, Dec. 29, 2020, D.E. 7.[2]

---

[2] Courts presented with an *ex parte* application under § 1782 routinely allow the initial application to proceed on an *ex parte* basis. *See, e.g., In re. Ex Parte Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782,* Civ. No. 20-8444, 2020 WL 6129607, at *1 (D.N.J. Oct. 19, 2020) (granting *ex parte* application and noting that where application seeks issuance of a subpoena, which the receiving party may move to quash, that party's rights are not substantially affected); *In re. Mesa Power Grp. LLC,* Civ. No. 11-280, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012) (granting *ex parte* application and reasoning that "[a]pplications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte* where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by the application."). However, other courts have allowed the party from whom the discovery is sought to intervene and oppose or otherwise respond to the initial application for § 1782 relief. *See In re. Ex Parte Application of JSC United Chemical Company Uralchem*, Civ. No. 20-3651, 2020 WL 4251476, at *1 (D.N.J. July 24, 2020) (allowing party to be subpoenaed to intervene and oppose *ex parte* application under § 1782).

On March 3, 2021, Merck filed its motion to quash the subpoena.  D.E. 9.  On March 24, 2021, M&H filed opposition to Merck's motion to quash and a cross-motion to compel compliance with the subpoena.  D.E. 11.  The parties also have filed reply submissions.  D.E. 15-16.

## III.   ANALYSIS

The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004). Under 28 U.S.C. § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  The statute further prescribes that "any interested party" may make the application to "direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court." *Id.*  Accordingly, there are three statutory prerequisites to obtaining relief under § 1782: "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by . . . any interested person." *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 U.S. Dist. LEXIS 5632, 2019 WL 168828, at *5 (citing *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998)).

The decision whether to grant an application pursuant to § 1782 is a discretionary one. *See Intel Corp.*, 542 U.S. at 264; *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018). Prior to ruling on an application, courts consider the following four additional considerations, which are commonly referred to as the *Intel* factors:

> (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid;

4

(2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States;

(4) whether the subpoena contains unduly intrusive or burdensome requests.

*In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (citing *Intel Corp.*, 542 U.S. at 264-65).

"A district court's discovery discretion under § 1782 must be exercised in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 38 (2d Cir. 2017) (quoting *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015)).

### A.      The Statutory Factors Under 28 U.S.C. § 1782

M&H's application satisfies the "modest prima facie elements" of § 1782. *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018). In fact, while Merck disputes the *Intel* discretionary factors, addressed below, its moving brief does not take issue with the statutory factors. *See generally* Brief in Support of Motion to Quash, D.E. 9-1. The first factor is easily satisfied, as Merck is incorporated in New Jersey and its principal place of business is in Kenilworth, New Jersey. Ex Parte Application to Take Discovery, D.E. 1, at ¶5. The second factor is satisfied, as M&H has represented that it requires the discovery for use in the Foreign Action.[3]

---

[3]  Merck contends that the discovery M&H seeks is irrelevant to the Foreign Action, in which the core question is whether the unilateral termination of the Agreements was unlawful. *See, e.g.*, Brief in Support of Motion to Quash, D.E. 9-1, at 14-19. The Court addresses this issue below.

Memorandum of Law in Support of Application under 28 U.S.C. § 1782, D.E. 1, at 5.  Finally, M&H qualifies as an "interested person" under § 1782, as it seeks the discovery to prosecute its claims against Organon India, Organon B.V., and Merck in the Foreign Action.

  **B.**  **The *Intel* Discretionary Factors**

  The Court now considers whether M&H's application meets the discretionary *Intel* factors. Initially, the parties dispute which of them bears the burden of proof.  When M&H submitted the application, it bore the burden of establishing that the application satisfied the statutory and discretionary factors. The Court concluded that M&H satisfied those factors in granting the application.  Order, Dec. 29, 2020, D.E. 7.  The issue is now which party bears the burden of proof in resolving Merck's motion to quash, and M&H's cross-motion to compel.

  Merck contends that as the applicant for § 1782 relief, M&H bears of burden of establishing that the balance of factors favors granting relief.  *See* Brief in Support of Motion to Quash, D.E. 9-1, at 7 (quoting *In re JSC United Chem. Co. Uralchem,* Civ. No. 20-3651, 2020 WL 4251476, at *6 (D.N.J. July 24, 2020)).  On the other hand, M&H contends that "Merck as the party opposing discovery bears the burden of demonstrating why it should not have to produce discovery."  *See* Brief in Support of Motion to Compel and in Opposition to Motion to Quash, D.E. 11-16, at 10.

  The Third Circuit resolved the question of which party bears the burden in *Bayer AG v. Betachem, Inc.,* 173 F.3d 188 (3d Cir. 1999).  There, the Third Circuit reasoned that "[t]he party opposing discovery has the 'burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application'" under § 1782.  *Bayer AG*, 173 F.3d at 190 (quoting *In re. Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998) ("[D]istrict courts should treat relevant discovery materials sought pursuant to pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify partial denial of the

application.")).  The *Intel* decision did not alter that analysis.  In fact, four years after *Intel*, the Third Circuit relied on *Bayer AG* to place the burden on the respondent in *In re. Chevron Corp.*, 633 F.3d 153 (2011).  *In re. Chevron Corp.*, 633 F.3d at 162.  *See also Heraeus Kulzer GmBh v. Biomet, Inc.*, 633 F.3d 591, 597 (7ᵗʰ Cir. 2011) ("Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives.").

> **Factor 1:** **Whether the Discovery Lies within the Reach of the Foreign Tribunal**

The first factor considers whether the party from whom the discovery is sought is a participant in the foreign proceeding.  "Resort to Section 1782 is disfavored when the targets of discovery are actual participants in the foreign proceeding*." In re. JSC United Chemical Company Uralchem*, 2020 WL 425176, at *6.  *See also Intel Corp.*, 542 U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in a matter arising abroad").

There is no dispute that Merck is a party to the Foreign Action.  At first glance, that would suggest that the first factor weighs against M&H's application.  M&H argues, however, that Merck has not meaningfully participated in the Foreign Action, and has not "produced a single piece of paper in that action."  Brief in Support of Motion to Compel, D.E. 11-16, at 9.  Instead, according to M&H, Merck has relied on Organon India to litigate the case, and M&H has had little recourse in the Foreign Action to address failures to provide relevant information.  Affidavit of Vishenwar Nath Khare in Support of M&H Mot. to Compel, D.E. 11-8, at ¶¶2, 12, 19-20 ("Khare Aff.").[4]

---

[4] Relying on Local Civil Rule 7.2, Merck argues that the Court should not rely on the Khare Affidavit because the affidavit is not limited to statements of fact within Khare's personal

Courts have excused a party's failure to seek the discovery in the foreign proceeding before seeking relief under § 1782. *See In re Application of Kate O'Keeffe*, Civ. No. 14-5835, 2010 WL 540238, at *6 (D.N.J. Feb. 10, 2015) ("[T]he law is clear that there is no requirement that a foreign litigant first attempt to obtain discovery through the foreign forum before resorting to Section 1782."); *In re California State Teachers Retirement Sys.,* Civ. No. 16-4251, 2017 WL 1246349, at *2 (D.N.J. Apr. 3, 2017) (rejecting discovery target's argument that first Intel factor weighed against petitioner because documents might be within jurisdiction of German court hosting the foreign litigation, reasoning that "Appellant does not come forward with any evidence of those documents actually existing in Germany. Second, just because documents are located in Germany does not mean that the documents are accessible through German discovery."); *Gyptec S.A. v. Hakim-Daccach,* No. 16-20810, 2017 WL 6557425, at *7 (S.D. Fla. Sept. 27, 2017 ("whether or not [the recipient of the discovery requests] has stated that he will submit to the discovery requests if ordered by a court in Colombia (or whether discovery of specific documents is allowed in Colombian procedures), [the Petitioner] is still entitled to seek the discovery pursuant to Section 1782. While the first factor may weigh slightly in favor of [the recipient of the discovery requests] as he is party to ongoing litigation, this does not preclude [Petitioner] from seeking the discovery pursuant to Section 1782.").

---

knowledge. *See* Reply Brief in Support of Motion to Quash, D.E. 15, at 14 n.6. However, Federal Rule of Civil Procedure 44.1 expressly authorizes courts analyzing foreign law, which presumably includes foreign proceedings, to "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Visheshwar Nath Khare is the former Chief Justice of the Supreme Court of India, having served in that capacity from December 19, 2002 to May 1, 2004. Khare Aff. at ¶1. Before that position, he served as a judge on the Supreme Court, and in other judicial capacities for nearly twenty years. *Id.* Before ascending to the bench, former Chief Justice Khare practiced as a lawyer throughout India, beginning in or around 1961. *Id.* He is well familiar with litigation in Indian courts and has reviewed the record of the proceedings in the Foreign Action. The Court will, in its discretion, consider the Khare Affidavit where appropriate to do so.

In this case, the Court concludes that the first factor is neutral.  Even accepting as true M&H's contention that Merck has not produced discovery in the Foreign Action, and that M&H has little recourse in the India court to compel the production of discovery, M&H fails to explain its efforts to procure in the Foreign Action the discovery it now seeks.  At this point, it is not even clear that M&H ever actually sought, in the Foreign Action, the specific discovery that it seeks here.  In fact, according to Merck's counsel, "M&H's Counsel admitted that the discovery material sought in the Application had not been requested in the Foreign Action."  Declaration of Lisa Dykstra in Support of Merck's Reply Memorandum, Mar. 31, 2021, D.E. 15-1, at ¶¶19-20.

On the other hand, as noted above, courts have not generally held such a failure as a barrier to proceeding with an application under § 1782.  "The decision of how to seek discovery lies with the party seeking the discovery, and requiring that [Petitioner] seek discovery in Colombia would result in including an exhaustion requirement in section 1782 that is not present."  *Gyptec. S.A.*, 2017 WL 6557425, at *7.  Merck has not argued that producing the documents in this matter, as opposed to doing so in the Foreign Action, would impose additional burden on it.  To the contrary, Merck is incorporated in New Jersey, and its principal place of business is in New Jersey.  It therefore appears likely that the records, whether ordered to be produced in the Foreign Action, or by this Court, are readily accessible to Merck.  Further, as in *In re California State Teachers Retirement Sys.,* there is no indication that Merck would have agreed to produce the information in the Foreign Action, or that the discovery would otherwise have been available in India.  *See, e.g.*, Khare Aff., D.E. 11-8, at ¶¶17-19.

### Factor 2:     The Foreign Tribunal's Receptivity to Federal Court Assistance

The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government

or the court or agency abroad to U.S. federal-court judicial assistance." *In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (citing *Intel Corp.*, 542 U.S. at 264-65). The test is not whether the foreign tribunal ultimately will admit the discovery sought into evidence at trial. *Id.* (finding that the district court did not abuse its discretion in requiring "authoritative proof that the foreign court would reject the evidence obtained with the aid of Section 1782" on a motion to quash a subpoena); *In re Hopkins*, Civ. No. 20-8012, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) ("In the absence of evidence that the Cayman Islands courts object more generally to the assistance of U.S. federal courts, the Court finds that this factor weighs in favor of authorizing service of the subpoena."). Therefore, absent evidence that the foreign tribunal would reject evidence obtained under § 1782, or that granting the application would contravene the laws or policies of the foreign tribunal or the United States, discovery into apparently relevant material under § 1782 should be allowed. *In re Bayer*, 146 F.3d at 195; *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996).

Merck argues that discovery in the Foreign Action closed in December of 2014. *See* Brief in Support of Motion to Quash, D.E. 9-1, at 8; Barot Decl., D.E. 9-7, Exs. B-D. D.E. 9-1 at 8 & Exhibits B-D annexed to Barot Decl. However, the Court does not find that Merck has established that the High Court of Bombay has closed discovery, or issued such other mandate that would necessarily preclude M&H from using at trial the discovery it is allowed to obtain in this proceeding.

The Foreign Action initiated in 2010. *See* D.E. 1-2. On December 3, 2014, the High Court of Bombay directed the parties to file their respective affidavit of documents and to complete related discovery and inspection. Ex. B to Declaration of Rajendra Barot in Support of Motion to Quash, ("Barot Decl.") D.E. 9-7 at 13. On January 28, 2015, the court issued an Issues of

Determination[5] that stated: "As and by way of last chance, the parties are given an opportunity to file their respective affidavit of documents and also complete discovery and inspection and the same is to be completed on or before 13.2.2015.  It is made clear that no further time will be granted." Ex. D to Barot Decl., D.E. 9-7 at 20.  Despite the admonition by the court in its January 28, 2015 filing, the court extended the deadline for discovery on December 14, 2015.  On that date, the court issued a discovery order that noted "[the] [i]nspection of documents by the parties is incomplete. The parties seek time beyond vacation. Standover to 21 January 2016." Ex. E to Declaration of Adam J. Safer in Support of M&H Mot. to Compel, D.E. 11-6 at 2.  While the January 21, 2016 deadline passed some time ago, it does not appear that the High Court of Bombay has issued any further order terminating or limiting discovery.  Khare Aff. at ¶11.  Nor has the court set a trial date. *Id.* ¶¶7-8, 28.  It therefore appears from the High Court of Bombay's own orders that it has the authority to extend the deadline for discovery, not unlike a United States district court's discretion to extend discovery under Federal Rule of Civil Procedure 16. Accordingly, the Court concludes that Merck has proffered no specific evidence that, to the extent the application seeks relevant discovery, the High Court of Bombay would reject it.

The Issues of Determination filed by the High Court of Bombay framed the issues as follows:

1.     Whether the plaintiff proves that the letter dated 18th February, 1998 read with letter dated 10th April 2021 create an irrevocable and indefinite arrangement/agreement between the original plaintiff and the defendants?

2.     Whether the plaintiff proves it was Sales Partner of the first defendant in India?

3.     Whether the plaintiff proves that they were the exclusive/sole distributor of the products manufactured by the first defendant?

---

[5] An Issues of Determination is an order that lays out the list of trial issues for the Foreign Action prior to its trial setting.

4.      Whether the plaintiff proves that the agreement/arrangement with defendant No.2 was irrevocable and for a definite period?

5.      Whether the plaintiff proves that the termination of arrangement/agreement by defendant No.1 was illegal?

6.      Whether the plaintiff proves that they have incurred expenditure towards managerial staff for providing equipment at branch, etc, arranging accommodation, filing suits/ac on behalf of defendants, claim towards C and F forms, Sales Tax demands and/or by way of Service Tax which the defendants are bound to pay?

7.      If the answer to above issue is in the affirmative, whether the plaintiff proves that the defendants are bound and liable to pay to the plaintiff a sum of Rs.23,97,30,95,875/-?

8.      Whether the plaintiff proves that they are entitled to a sum of Rs.13,46,33,873.59/-?

9.      Whether the plaintiff proves that they are entitled to a decree in the sum of Rs.23,83,84,62,001.41/- together with interest thereon at the rate of 18% per annum on the said amount due from the date of institution of the suit until payment/realization?

Barot Decl. at Ex. D.

The Court is satisfied that at least some of the discovery that M&H seeks may be relevant to the foregoing issues.  For example, discovery concerning the circumstances of the decision by Merck, Organon B.V., or Organon India to terminate the Agreements with M&H, those entities' evaluation of the Agreements prior to termination, and the implementation or alteration of any distribution and logistics policy may prove to be admissible in the Foreign Action.  Certainly, such discovery might be pertinent to Issue No. 3 (whether M&H can prove it was the exclusive distributor), Issue No. 4 (whether the Agreements were irrevocable and for a finite time period), and Issue No. 5 (whether Organon India's termination of the Agreements was lawful). Accordingly, the Court is satisfied that this factor weighs in favor of the application.

**Factor 3:**  **Whether the Request Conceals an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of a Foreign Country or the United States**

Nothing in the record suggests M&H has attempted to circumvent proof-gathering restrictions or other policies of the High Court of Bombay or the United States by making the application under § 1782.  Merck gamely attempts to make a showing under this factor by arguing that M&H has not shown that it is not seeking to circumvent the High Court's discovery rules.  Brief in Support of Motion to Quash, D.E. 9-1, at 10.  That argument is flawed for two reasons.  First, it improperly attempts to shift the burden to M&H.  As the party opposing the application and seeking to quash the subpoena, it is Merck's obligation to come forward with facts and evidence of circumvention.  Merck has not done so.  And to the extent Merck's showing again relies on the fact that M&H did not seek the discovery in the Foreign Action, the Court has already addressed it in the context of the first *Intel* factor.  The third *Intel* factor favors M&H.

**Factor 4:**  **Whether the Subpoena Contains Unduly Intrusive or Burdensome Requests**

The final *Intel* factor requires a court assessing an application under § 1782 to "assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).  *See also In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016) ("Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45.").  The requested discovery must be "'reasonably calculated to lead to the discovery of admissible evidence' pursuant to Rule 26, and must be designed 'to avoid imposing undue burden on a person subject to the subpoena.'"  *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782,* Civ. No. 17-4269, 2019 WL 168828, at *12 (D.N.J. Jan. 10, 2019) (quoting *Glob. Energy Horizons Corp.,* 647 F.

App'x at 86).   Therefore, although relevance itself is not the touchstone of this analysis, nor is undue burden the sole benchmark.  The Court is obligated to consider whether the information sought in the subpoena is overly broad, oppressive, or disproportional to the needs of the case.  *Id.* at 13.   Further, the Court retains the discretion to either reject outright an overly broad, disproportionate, or unduly burdensome subpoena, or to modify it.  *Id.* (quoting *In re Macquarie Bank Ltd.*, Civ. No. 14-797, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015)).

As discussed above, the Court is satisfied that at least some of the categories of documents M&H seeks likely serve some use in the Foreign Action.  However, the Court has significant reservations concerning the breadth of the subpoena relative to the Issues of Determination.  For example, the subpoena defines the relevant time period for production as November 2009 to the present.  But the merger of Schering Plough and Merck occurred in 2009, and Organon India terminated the Agreements effective three months from the August 2, 2010 letter, or some time in November 2010.  Jain Decl., D.E. 1-2, at ¶¶24-25.  Given that the breach as alleged by M&H's own counsel appears to have occurred in 2010, it is difficult to grasp the broad timeframe of the subpoena.  Additionally, the Court struggles to understand how documents and communications concerning the motivations or strategy underlying Merck's merger with Schering Plough are likely to be of use to the trial of M&H's claims for breach of the Agreements and tortious interference.

The Court is persuaded that it is appropriate at this time to require the parties to meet and confer on the scope of the subpoena, and thereby afford them an opportunity to attempt to resolve dispute concerning the scope of the subpoena.  It does not appear that the parties have meaningfully met and conferred to date.  Rather, the parties accuse each other of thwarting any such efforts.  *See, e.g.*, Dyskstra Decl., D.E. 15-1, at ¶¶15-23; Reply Brief in Further Support of

Motion to Compel, D.E. 16, at 10.  Perhaps with the benefit of this ruling, the parties will be able to reach agreement on terms to resolve the matter.  If not, the Court will hear additional argument from each party and rule on any remaining disputes.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Merck's motion to quash the subpoena.  The Court grants M&H's cross-motion to compel, subject to the parties meeting and conferring on the timeframe and categories set forth in the subpoena.  Within thirty days, the parties will submit a joint status report on their progress in resolving the matter.

_s/ Michael A. Hammer_
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

Dated: June 14, 2021